**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LE'ANDRES CALLAHAN, | ) | |
| TASHA CALLAHAN, | ) | |
| N.C., I.C., and L.C. (Minors) | ) | |
| Plaintiffs, | ) | Case No.  10 C 864 |
| | ) | |
| vs. | ) | Judge St. Eve |
| | ) | |
| Lake County Sheriff Deputy HEATHER | ) | Magistrate Judge Cox |
| ALDRIDGE, KYLE MACKO, LAKE | ) | |
| COUNTY SHERIFF'S OFFICE and | ) | |
| LAKE COUNTY, | ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM  IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants, LAKE COUNTY SHERIFF'S DEPUTIES HEATHER ALDRIDGE and KYLE

MACKO, LAKE COUNTY SHERIFF'S OFFICE and LAKE COUNTY, by MICHAEL WALLER,

State's Attorney of Lake County, Illinois and GUNNAR GUNNARSSON and LISLE A. STALTER,

Assistant State's Attorneys for Lake County, pursuant to Federal Rule of Civil Procedure 56 and

Local Rule 56.1, and in reply to the Plaintiffs' Response to the Defendants' Motion for Partial

Summary Judgment submit this Reply Memorandum of Law.

**I.  INTRODUCTION**

As noted in the opening memorandum in support of the defendants' motion for partial

summary judgment, the plaintiffs' claim that defendant Deputy Aldridge pulled her gun and

threatened Le'Andres Callahan is hotly disputed.  The plaintiffs say it happened.  The defendants

1

absolutely deny it. It will be a matter for a jury to determine who is telling the truth and who is lying about this. However, the defendants brought their motion for partial summary judgment because even if the plaintiffs' version of the events were true the minor children plaintiffs still do not have their own claims for excessive force and common law assault against Deputy Aldridge. The defendants also moved for partial summary judgment with respect to the illegal entry claim, because, once again, even if the plaintiffs' version is true, even if the plaintiffs did not consent to the entry, the defendant deputies are still entitled to enter the residence without a warrant under exigent circumstances, because they were responding to what they understood was a 911 emergency call stating there was a burglar alarm going off at the plaintiffs' residence. Thus when the plaintiffs question in their response how the defendants could file for summary judgment when so much is so hotly contested they miss the point. The defendants filed their motion because even if the plaintiffs' version of the facts is true the defendants are still entitled to summary judgment on the childrens' claim of excessive force and common law assault and on the Fourth Amendment and state law trespass claims arising out of the defendants entry of the premises.

## II. ARGUMENT

**A.  The three children plaintiffs cannot maintain excessive force or assault claims.**

In arguing that the children could maintain an excessive force claim even though each of the children stated the gun was not pointed at them, the plaintiffs attempt to distinguish *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir., 1990)--which had held that bystanders cannot maintain a claim against a police officer for excessive force--by arguing that bullets can hit people other than the intended target. But this still does not save these claims. The *Archuleta* court itself noted in

affirming summary judgment against the bystander:

> "The problem with plaintiff's claim is that no state conduct was directed at him, and he cannot establish that defendants had the requisite intent to violate *his* rights. He was merely a bystander who was asserting indirect and unintended injury as a result of police conduct directed toward another."

*Archuleta v. McShan* 897 F.2d 495, 498 (10th Cir.,1990).

Thus even if the children perceived any threat to themselves from a gun that was not pointed at them they cannot establish the requisite intent to violate *their* rights. No state conduct was directed at them, which the children acknowledge in stating that the gun was not pointed at them. Nor can speculation about possible unintended injuries satisfy the requirement that the force be directed at them.

The plaintiffs additionally claim that the defendants are mistaken in arguing that the children stated that the gun was not pointed at them. In support of their argument, the plaintiffs cite to parts of one of the childrens' depositions in which the child talks about the gun being drawn "past" his face. But that child, too, as all the others, said that the gun was not pointed at him. And in any case, neither that child, nor the others, claims that he perceived a threat directed at himself, but at his father. Finally, although the children plaintiffs assert they were in the "line of fire" this is again contradicted not only by their own testimony that the gun was not pointed at them, but by the testimony that the children were seated at the table during this alleged incident, that Mr. Callahan was standing and that, Callahan claimed, the gun was pointed at his head throughout. Thus even in their version of events, the children not only did not perceive themselves in the "line of fire" but in fact they could not have been in the "line of fire".

Nor have the Plaintiffs shown that the children can maintain state law assault claims. They

3

argue that the children were assaulted even if the alleged conduct of the deputy was directed at Mr.

Callahan. In support of their argument, the plaintiffs cite to a Seventh Circuit opinion, *Matter of EDC, Inc.*, 930 F.2d 1275, and adopt that court's analogy that it is like blowing up a plane to harm a single individual on the plane: because the offender knows that all the occupants on the plane will be harmed the intent to harm all of them exists through the defendant's extreme recklessness, which is equated with deliberateness. But this analogy fails here not only because speculating that the children might be hurt by a gun pointed at Mr. Callahan is vastly different from the certainty that passengers other than the intended target will be hurt by a bomb aboard a plane, but it fails in that the children stated that the gun was not pointed at them and that the concomitant verbal threat which was allegedly made by the deputy was directed at Mr. Callahan and not at them. Thus, even in plaintiffs' verison of the event, the children simply did not have a "well-founded fear of imminent peril", as is necessary for them to maintain an assault claim. Certainly the children do not say that they held such fear. Thus, here, too, the children plaintiffs' claims fail. The defendants should be granted summary judgment on the childrens' claims of excessive force under Section 1983 and of state law assault.

## B. Exigent circumstances warranted entry into plaintiffs' residence.

Exigent circumstances existed warranting Officers Aldridge and Macko's entry into the plaintiffs' residence. This is true, notwithstanding the information provided by plaintiffs as this information does not address the elements to review in making the determination that summary judgment on Count I is appropriate. The parties do not disagree that if exigent circumstances exist, warrantless entry is permitted. The parties also do not disagree that the determination of whether

exigent circumstances existed must be based upon the officers' perspective at the time of entry. *U.S. v. Marshall*, 157 F.3d 477, 482 (7th Cir. 1998).

      The relevant facts on this issue are that Officers Aldridge and Macko were specifically dispatched to plaintiffs' house in response to a 911 call for a burglar alarm. The facts asserted by plaintiffs that this may have been the incorrect location are not relevant here. Plaintiffs provide no facts to establish that Officers Aldridge and Macko knew this when they were standing at the door responding to a 911 dispatch for a burglar alarm. Although plaintiffs indicate they answered the door "as soon as the knocking began" other than the depositions of the plaintiffs, there is no evidence to support this. On the contrary, dispatch notes indicate that the officers arrived at the dispatched location at the latest 14:13:21 hours. Dispatch records (which would be taken contemporaneously with the action identified) also show that at 14:16:40 hours someone was at the door but would not open it. (Tab "1" to Defendants' Response to Plaintiffs' Statement of Additional Facts ("RSOAF"), Wermeling Affidavit.) Dispatch records also show that it was not until 14:19:18 hours – six minutes from time of arrival and three minutes after someone was observed at the door that they were provided with identification. (Tab 1 RSOAF, Wermeling Affidavit.) And, dispatch records show that the animal cruelty became an issue within five minutes after verifying Le'Andres' identity and animal control was called a couple of minutes later. (Tab 1 RSOAF, Wermeling Affidavit.) These facts do not support that plaintiffs' assertion that they opened the door as soon as they heard knocking and support the basis for the officers remaining in the residence once the identifies were verified.

      A motion for summary judgment is to be viewed in a light most favorable to the non-movant, but when exigent circumstances are involved only those facts known by the officers at the time

should be considered.  That is critical here.  Even though there was no sign of forced entry, the officers were dispatched to the Grandmore address based upon a 911 burglar alarm call.  Although plaintiffs indicate they answered the door as soon as they heard knocking, any time delay perceived by the officers can be taken into consideration under this standard.  Deputy Macko testified that based upon the 911 call, the occupant's delay in opening the door or identifying themselves raised concern for the safety of the occupants.  (Tab 4, Defendants' Statement of Facts, Macko deposition, page 17, lines 14 - 24.)  The Seventh Circuit has recognized exigent circumstances justify entry into a residence when there is a 911 call and there is concern for the safety of someone inside the premises.  *See United States v. Jenkins*, 329 F.3d 579, 581 (7th Cir. 2003) (911 call, with additional information, can be enough to support warrantless search under exigent circumstances); *United States v. Arch*, 7 F.3d 1300, 1304 (7th Cir. 1993) (finding that exigent circumstances existed based upon the officers observations); *see also United States v. Collins*, 110 Fed. Appx. 701, 703 (citing *Jenkins* and recognizing exigent circumstances exist where officers have reasonable fear for someone inside a residence).

Although plaintiffs assert that the defendants have not cited any cases close to the events that occurred at the Callahan residence, they provide no cases of similar facts for this court to consider on this issue and support their position that there were not exigent circumstances warranting entry into the home.  The cases cited and fully discussed in the partial motion for summary judgment by defendants support a determination that responding to a 911 call for a burglar alarm, observing suspicious activity inside the residence, no one answering the door after several minutes are the relevant facts for this court to consider and provide a basis for determining that exigent circumstances existed for entry into the residence.  As exigent circumstances existed, entry into the

6

residence was warranted and summary judgment is appropriate on Count I of the complaint.


**C.     Defendants entry into the premises was an exercise of lawful authority and therefore is not trespass.**

Plaintiffs lump their response to the Count I and Count IV motion into one section.  By doing this they fail to address the motion for summary judgment on the state law trespass claim in Count IV.  As discussed in the motion for summary judgment, a trespass by officers is negated when they are discharging their official duties.  *See Caldwell v. City of Chicago*, 2010 WL 2722207 (N.D. Ill 2010) (attached to memorandum of law in support of Defendants' Motion for Summary Judgment at Exhibit F.)

Contrary to plaintiffs' assertion, *Puch v. Village of Glenwood*, 2008 WL 4442610 at 6(N.D. Ill. 2008) is instructive on this case.  Although the facts are not exactly the same, they do not have to be exact to be considered helpful to the analysis of the facts before the court.  In this case, the officers were dispatched for a 911 call that a burglar alarm was going off.  When they arrived to check the residence that they were specifically dispatched to, the delay in opening the door or identifying themselves raised concern for the safety of those inside.  (Tab 4, Defendants' Statement of Facts, Macko deposition, page 17, lines 14 - 24.)  This is sufficient to support the determination that Officers Aldridge and Macko were discharging their official duties and as such no trespass occurred.

As discussed fully above, entry into the Callahan residence was based upon exigent circumstances and as such was lawful.  As the entry is lawful, Deputies Aldridge and Macko did not commit a trespass. Where no trespass occurred, summary judgment is warranted.

7

**E.     Defendants are immune from liability from the childrens' claims of excessive force and the plaintiffs' claims of unlawful entry.**

**i.     Defendant Deputy Aldridge is entitled to qualified immunity with respect to the children plaintiffs claims of excessive force.**

The defendants have been unable to find any case that holds that a third party can maintain a claim of excessive force where a gun was pointed at someone else, even if the third party subjectively feared for himself or herself.  Nor have the plaintiffs directed the court's attention to any such case.  Before any police officer should be held to account at trial on such a claim, and particularly where the qualified immunity defense is asserted, the plaintiffs should identify caselaw showing that such a claim can be maintained.  The plaintiffs have failed to make such a showing. The plaintiffs incendiary argument that qualified immunity cannot possibly apply where an officer is claimed to have threatened to murder someone should not dissuade the court from making this required showing.  The children plaintiffs must show that it was clearly established that the defendant's actions violated *their* rights and not that the defendant's actions violated *someone's* rights.  Again, here, there has been no such showing.

The plaintiffs cite to *Morrell v. Mock*, 270 F.3d 1090 (7th Cir., 2001), in arguing that to defeat an affirmative defense of qualified immunity on the federal claims all the plaintiffs need do is show that the violation is so obvious that a reasonable state actor would know that what he is doing violates the Constitution.  The plaintiffs argue that this means all they must do is show that a reasonable officer would know that what he is doing violates the Constitution.  But this does not correctly state the standard.  Indeed as the *Morrell* court itself states:

> To evaluate defendants' claim of qualified immunity under § 1983, the court must decide (1) whether plaintiff has stated a claim for violation of *her constitutional*

8

rights, and if so, (2) whether *those* rights were clearly established at the time of the violation, such that a reasonable official would understand that what he was doing violates those rights.

*Morrell v. Mock*, 270 F.3d 1090, 1094 (7th Cir., 2001)(emphasis added).

Thus to overcome the defense of qualified immunity the plaintiff must show not that someone's rights were clearly established, but that her rights were clearly established and that a reasonable official would understand what he is doing violates those rights. Here, once again, all the caselaw that defendants have been able to identify indicates that it was not clearly established that a bystander has a right to be free of excessive force where a gun is not pointed at her, even if the bystander were put into personal fear. Certainly the plaintiffs have failed to point to any closely analogous case that so holds. Thus if the children were the only plaintiffs in this case and they were trying to maintain excessive force claims against Deputy Aldridge, based on the story they present here, Deputy Aldridge would be entitled to qualified immunity since the law would not have been clearly established that their right to be free from excessive force was violated. Here the fact that Mr. Callahan is also a plaintiff should not change the analysis. Looking squarely and solely at the children's claims of excessive force, defendant Deputy Aldridge is entitled to qualified immunity.

ii.     **Defendants Deputy Aldridge and Deputy Macko are entitled to immunity on the claims of illegal entry.**

Other than simply stating the standards for qualified immunity and asserting that those standards are not met here, the plaintiffs give little basis for their assertion that qualified immunity is not applicable to this case. In addition, they misstate the defendants' position on defense. The officers' belief that they had consent to enter the plaintiffs residence does not mean that the qualified

immunity defense is a "fall back" position. As described in the defendants' motion for summary judgment and above, the circumstances presented to Officers Aldridge and Macko unfolded in such a way that exigent circumstances existed to justify the warrantless entry.

Qualified immunity grants an officer immunity for reasonable mistakes as to the legality of his action. Such is the case here. In hindsight we know that the Callahans resided at the Grandmore address that Officers Aldridge and Macko were sent to and in hindsight we know that there was not a burglar alarm going off at that residence. But this case cannot be decided on what we know in hindsight, it must be reviewed in light of what the officers knew, standing at the door, responding to a 911 call for a burglar alarm. Under the facts in this case, Officers Aldridge's and Macko's actions should be afforded qualified immunity.

The determination of whether conduct of an officer is willful and wanton under Section 2-202 of the Illinois Tort Immunity Act is not within the sole province of the jury. Illinois courts have recognized that this question can be resolved by the court on a motion for summary judgment. *Shuttlesworth v. City of Chicago*, 377 Ill. App. 3d 360, 366, 879 N.E.3d 969, 974 (Ill. App. Ct. 1st Dist. 2007). If this court finds, as it should, that there was no genuine issue of material fact as to whether Officers Aldridge and Macko acted with willful and wanton conduct then summary judgment is appropriate. The undisputed facts of this case support a determination that there was no actual or deliberate intention to harm the plaintiffs nor was there with an utter indifference for the plaintiffs safety – in fact the opposite was true, as stated in deposition by Officer Macko, there was concern for the safety of the occupants of the house, that is why entry was justified even if consent had not been given. With these facts, entry into the house was warranted to enforce the law and the protections of Section 2-202 of the Tort Immunity Act provide relief from liability.

10

Additionally, in contesting the application of Section 2-202 plaintiffs assert facts that are not part of this record – that the officers refused to allow the Callahans to show their ids through the screen door and that the officers broke into their home. They also assert that the officers' knew that Le'Andres Callahan resided at the house because it was his car in the driveway. But, there were no facts to support plaintiffs' conclusion from these facts that the officers knew that the male in the house that they observed was Le'Andres Callahan. The Officers did not know this until Le'Andres showed them his identification, and that did not occur until the officers were inside the house.

Contrary to plaintiffs assertion, Section 2-201 of the Tort Immunity Act does provide protection to officers responding to a call. *See Fender v. Town of Cicero*, 347 Ill. App. 3d 46, 807 N.E.2d 606 (Ill. App. Ct. 1st Dist. 2004)[1]. In *Fender* the court recognized that officers make a policy decision when making a determination in how to respond to a call and the actions taken thereunder are discretionary as they were being performed in an emergency setting. As such, Officers Aldridge and Macko enjoy immunity from any liability in response to this 911 call for a burglar alarm at the Callahan residence.

## V. CONCLUSION

For the foregoing reasons, therefore, the Court should grant summary judgment in favor of the defendants on Counts II and III with respect to the children plaintiffs' claims of excessive force and assault and on Count I with respect to all of the plaintiffs' illegal entry claims and on Count IV with respect to the state law trespass claims.

---

[1] In 2003 Public Act 93-11 amended Section 8-101 of the Tort Immunity Act to set forth new statute of limitations. 745 ILCS 10/8-101. Other than the statute of limitations application, Section 2-201 was not affected by the amendment of P.A. 93-11 and this case is still valid for the proposition for which it is cited.

11

Respectfully submitted,

MICHAEL J. WALLER
State's Attorney of Lake County


By:     s/Gunnar Gunnarsson_____
        Assistant States Attorney



Michael J. Waller
States Attorney of Lake County
Gunnar Gunnarsson #6198562
Lisle A. Stalter #6242950
Assistant States Attorneys
18 N. County Street
Waukegan, IL 60085
 (847) 377-3050