IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LE'ANDRES CALLAHAN, TASHA CALLAHAN, N.C., I.C., AND L.C., minors, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 10 C 0864 |
| v. | ) ) ) | |
| HEATHER ALDRIDGE, KYLE MACKO, LAKE COUNTY SHERIFF'S OFFICE, and LAKE COUNTY, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On September 2, 2010, Plaintiffs Le'Andres Callahan and Tasha Callahan, on behalf of themselves and their minor children N.C., I.C., and L.C, filed the present five-count Fourth Amended Complaint against Defendant Lake County Sheriff Deputies Heather Aldridge and Kyle Macko, the Lake County Sheriff's Office, and the County of Lake, Illinois alleging violations of their constitutional rights pursuant to 42 U.S.C. § 1983, along with the state law claims of assault, trespass, and indemnification. *See* 28 U.S.C. § 1367(a). Before the Court is Defendants' Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court denies Defendants' motion in its entirety.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Northern District of Illinois Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to

prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Also, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

The purpose of Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). Further, the Court may disregard statements and responses that do not properly cite to the record. *See Cichon,* 401 F.3d at 809-10; *see also Raymond v. Ameritech Corp.,* 442 F.3d 600, 604 (7th Cir. 2006) ("district courts are entitled to expect strict compliance with Local Rule 56.1"). With these standards in mind, the Court turns to the relevant facts of this case.

## II.     Relevant Facts

Plaintiffs Le'Andres Callahan, Tasha Callahan, and their minor children "N.C.," "I.C.," and "L.C." (the "Callahans") are individuals who at all relevant times resided within the

Northern District of Illinois. (R. 47, Defs.' Rule 56.1 Stmt. Facts ¶ 1.) Defendant Heather Aldridge ("Aldridge") and Defendant Kyle Macko ("Macko") are individuals who at all relevant times were employed as Deputy Sheriffs of Lake County, Illinois. (*Id*. ¶¶ 2, 3.) Defendant Lake County Sheriff's Office employed Deputy Aldridge and Deputy Macko during the relevant time period. (*Id*. ¶ 4.) Defendant County of Lake is a body politic and corporation organized under the laws of the State of Illinois and is located within the Northern District of Illinois. (*Id*. ¶ 5.)

On January 14, 2010, Lake County Sheriff's Deputies Aldridge and Macko were assigned to Lake County Sheriff's District 1 and were driving separate squad cars. (*Id*. ¶ 8.) On that date, a 911 telephone call was made to the Lake County Sheriff's dispatch center stating that burglar alarms were going off at the northeast corner of Grandmore and Frolic Avenues in Waukegan, Illinois. (*Id*. ¶ 9.) Thereafter, the Lake County Sheriff's dispatcher called on the radio and dispatched Deputies Aldridge and Macko to the Callahans' residence at 12392 Grandmore in Waukegan. (*Id*. ¶ 10.) It was later discovered that the dispatchers sent Deputies Aldridge and Macko to the wrong address. (R. 52, Pls.' Rule 56.1 Stmt. Facts. ¶ 40.) In fact, Plaintiffs present evidence that when the deputies arrived, they did not hear a burglar alarm and that the adult Callahans repeatedly told them that they did not have a burglar alarm for their home. (*Id.* ¶¶ 43, 44.)

In any event, after arriving at the Callahans' home, Deputies Aldridge and Macko knocked on the front door. (Defs.' Stmt. Facts ¶ 11.) The parties dispute what happened after that, although they agree that Tasha Callahan came to the door. (*Id*. ¶ 14.) Deputies Aldridge and Macko then explained why they were there and asked Tasha Callahan for her identification. (*Id*. ¶ 15.) After the deputies entered the residence, they also asked Le'Andres Callahan for his

3

identification. (*Id.* ¶ 22.) The deputies then verified that both Tasha and Le'Andres Callahan were lawful residents of the home. (*Id.* ¶ 23.) Sometime thereafter, the deputies saw children seated at the kitchen table doing their schoolwork. (*Id.* ¶ 26.)

According to Tasha Callahan, after the deputies went through the Callahans' living room, kitchen, and backyard, Deputy Aldridge became enraged, pulled her gun, and pointed it at Le'Andres Callahan's head. (*Id.* ¶¶ 31, 33.) Tasha Callahan also testified that Deputy Aldridge stated she was so angry at Le'Andres Callahan, she could kill him in front of his children. (*Id.* ¶ 32.) The parties dispute whether Deputy Aldridge pointed the gun at any of the Callahans, although the parties agree that exhibit 2 to Le'Andres Callahan's deposition was a diagram of the kitchen area at the time when Le'Andres Callahan stated that Deputy Aldridge drew her gun on him and that it depicts the children seated at the kitchen table while Deputy Aldridge and Le'Andres Callahan are standing. (*Id.* ¶¶ 34, 36, 37.)

At his deposition, I.C. replied to the question of whether Deputy Aldridge pointed the gun at him or his siblings by stating: "It went past my face when she pointed it." (Pls.' Stmt. Facts ¶ 54.) I.C. further testified that he was seated between Deputy Aldridge and his father. (*Id.*) At her deposition, N.C. stated that the gun was not directly pointed at her, but that she was five inches away from her father. (*Id.* ¶ 55.) L.C. testified that his back was to Deputy Aldridge for most of the time Deputy Aldridge had her gun out, but that he did turn around at least once to see what was going on. (*Id.* ¶ 56.) L.C. also testified that he was seated between Deputy Aldridge and his father. (*Id.*)

4

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted); *see also* Fed.R.Civ.P. 56(e)(2) (requiring adverse party to "set out specific facts").

## ANALYSIS

In their Fourth Amended Complaint, Plaintiffs allege: (1) an unlawful entry claim in violation of the Fourth Amendment against the individual Defendants; (2) a Fourth Amendment excessive force claim against Deputy Aldridge; (3) a state law assault claim against Deputy Aldridge; (4) a state law trespass claim against all Defendants; and (5) an indemnification claim against Lake County.

## I. Count II – Constitutional Excessive Force Claim

Although Deputy Aldridge denies that she drew her gun on any of the Callahans or threatened them in any way, Defendants argue that based on the Callahans' version of the events, Deputy Aldridge did not point her gun in the direction of the children. As such, Defendants maintain that no force was used against the minor children.

Courts review excessive force claims under the Fourth Amendment's objective reasonableness standard. *See Cyrus v. Town of Mukwonago,* 624 F.3d 856, 861 (7th Cir. 2010) (citing *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). "An officer's use of force is unreasonable from a constitutional point of view only if, 'judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'" *Gonzalez v. City of Elgin,* 578 F.3d 526, 539 (7th Cir. 2009) (citation omitted). Here, the parties do not dispute that a police officer pointing a gun at an individual can amount to excessive force. *See Baird v. Renbarger,* 576 F.3d 340, 344-45 (7th Cir. 2009) ("gun pointing when an individual presents no danger is unreasonable and violates the Fourth Amendment") (citation omitted); *see also McDonald v. Haskins,* 966 F.2d 292, 294 (7th Cir. 1992) (pointing gun at nine-year-old during search of residence and threatening to pull trigger is objectively unreasonable). Instead, Defendants argue that Deputy Alrdridge never pointed the gun at the Callahans' children, and thus the children's excessive force claims have no factual basis.

Viewing the facts and all reasonable inferences in Plaintiffs' favor, Plaintiffs have presented evidence creating a genuine issue of material fact for trial that Deputy Aldridge pointed her gun in the direction of the Callahans' children. More specifically, Le'Andres

6

Callahan testified that the children were sitting at the kitchen table and exhibit 2 to his deposition indicates as such. I.C. testified that the line of fire "went past my face when she pointed it" and that he was seated between Deputy Aldridge and his father. In addition, N.C. stated that the gun was not pointed at her, but that she was close her father – as close as five inches away. L.C. testified that he was seated between Deputy Aldridge and his father. Based on this evidence construed in Plaintiffs' favor, Deputy Aldridge pointed her gun in the direction of the Callahans' children while they were no threat of danger to her based on of the children's proximity to their father and because they were in the line of fire. *See Baird,* 576 F.3d at 344-45. Therefore, Defendants' argument at this stage of the proceedings is without merit.

Also, considering the facts and all reasonable inferences in Plaintiffs' favor, Defendants' qualified immunity argument is without merit based on the Seventh Circuit's decision in *Baird*, as discussed above, in which the Seventh Circuit concluded that "gun pointing when an individual presents no danger is unreasonable and violates the Fourth Amendment." *See id.* at 344-45; *see also Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("the right the official is alleged to have violated must have been 'clearly established' in a [] particularized" way"). The Court thereby denies Defendants' summary judgment motion regarding this claim.

## II. Count III – State Law Assault Claim

Next, Defendants argue that based on the Callahans' version of the events, the minor children cannot maintain their assault claims against Deputy Aldridge because she did not point the gun in the children's direction. As discussed above, construing the evidence and all reasonable inferences in a light most favorable to Plaintiffs, they have set forth evidence creating

7

a genuine issue of material fact that Deputy Aldridge pointed her gun in the direction of the children because of their proximity to their father and because they were in the line of fire.

Moreover, based on this evidence, Plaintiffs have raised a genuine issue of material fact for trial as to their minor children's assault claims based on Illinois law. To clarify, under Illinois tort law, assault involves intentional conduct that places the plaintiff in reasonable apprehension of an immediate battery, namely, bodily harm. *See McNeil v. Carter,* 318 Ill.App.3d 939, 944, 252 Ill.Dec. 413, 742 N.E.2d 1277 (Ill. 2001); *Parrish by Bowker v. Donahue,* 110 Ill.App.3d 1081, 1083, 66 Ill.Dec. 860, 443 N.E.2d 786 (Ill. 1982); *see also Benitez v. American Standard Circuits, Inc.,* 678 F.Supp.2d 745, 767 (N.D.Ill. 2010). Under this standard, when Deputy Aldridge pointed her gun in the direction of the children, the children would have been in reasonable apprehension of being shot, especially in light of evidence presented by Plaintiffs that the children were visibly shaken by Deputy Aldridge pointing her gun. (*See* Pls.' Stmt. Facts ¶ 61.)

In addition, the Illinois Tort Immunity Act does not shield Deputy Aldridge from liability. Specifically, viewing the evidence and all reasonable inferences in Plaintiffs' favor, Plaintiffs have presented evidence creating a genuine issue of material fact that Deputy Aldridge's conduct was willful and wanton because it exhibited a conscious disregard for the children's safety. *See* 745 ILCS 10/2-202; *see also Chelios v. Heavener* 520 F.3d 678, 692 (7th Cir. 2008) ("Illinois courts have held that a police officer is not guilty of willful or wanton conduct unless he acted with 'actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others.'") (citation omitted). Therefore, the Court denies Defendants' motion as to the minor children's assault claims.

**III.  Count I – Constitutional Unlawful Entry Claim**

Plaintiffs also bring an unlawful entry claim under the Fourth Amendment.  In general, warrantless searches and seizures of a home are presumptively unreasonable and a violation of the Fourth Amendment.  *See United States v. Huddleston,* 593 F.3d 596, 600 (7th Cir. 2010); *United States v. Bell*, 500 F.3d 609, 612 (7th Cir. 2007).  Warantless searches, however, are constitutionally permissible under certain narrowly proscribed situations, such as under exigent circumstances when an officer attempts to prevent serious injury or restore order.  *See Huddleston,* 593 F.3d at 600.  Exigent circumstances exist if the officer has an objectively reasonable need to act and has no time to obtain a search warrant.  *See id.*; *United States v. Venters,* 539 F.3d 801, 807 (7th Cir. 2008).  Another narrowly proscribed exception to warrantless searches is when "a person possessing, or reasonably believed to possess, authority over the premises voluntarily consents to the search."  *United States v. King,* 627 F.3d 641, 648 (7th Cir. 2010) (citation omitted).

In their motion for summary judgment, Defendants argue that Plaintiffs' unlawful entry claim fails because exigent circumstances existed based on Deputies Aldridge and Macko being dispatched to the Callahans' home because of a burglar alarm.  The facts surrounding the deputies' arrival at the Callahans' home, however, are hotly contested.  Plaintiffs present evidence that when the deputies arrived, they did not hear a burglar alarm and the adult Callahans repeatedly told them that they did not have a burglar alarm for their home.  (Pls.' Stmt. Facts ¶¶ 43, 44.)  Plaintiffs also dispute the deputies' version of the events that when the deputies knocked on their door, they did not receive an immediate answer and that it took the adult Callahans "some time" to retrieve their identification.  Based on these disputed facts, the Court

9

cannot determine as a matter of law that exigent circumstances existed for the deputies to lawfully enter the Callahans' home.

Defendants also maintain that they had consent to enter the Callahans' home, a fact that the Callahans' unequivocally deny. (Def.'s Stmt. Facts ¶ 18.) Because there are genuine issues of material fact whether the Callahans' gave Defendants consent to enter their home, the Court rejects the deputies' argument at this procedural posture. In sum, there are genuine issues of material fact whether the deputies could lawfully enter the Callahans' home without a search warrant. *See Venters,* 539 F.3d at 806.

Moreover, the Court rejects Defendants' qualified immunity argument. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). First, because the there is a genuine issue of material fact as to whether the Callahans' constitutional rights were violated, Plaintiffs have established the first requirement defeating summary judgment as any qualified immunity defense. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Second, Defendants' argument that there are no closely analogous cases under the circumstances is misplaced. To clarify, Plaintiffs need not find a factually indistinguishable case on point if they can show that Defendants' violation of their constitutional rights was so obvious that a reasonable officer would know that what she was doing violates the constitution. *See Moss v. Martin,* 614 F.3d 707, 712 (7th Cir. 2010); *Estate v. Escobedo v. Bender,* 600 F.3d 770, 780 (7th Cir. 2010). Construing the facts and all reasonable inferences in Plaintiffs' favor, it is obvious from the general principles of the Fourth Amendment that Defendants' entry into the Callahans' home without a search warrant and without any exigent circumstances or consent violated Plaintiffs' constitutional rights. Thus, the Court denies Defendants' summary judgment

motion regarding Plaintiffs' unlawful entry claim.

### IV.     Count IV – State Law Unlawful Trespass Claim

In Count IV of the Fourth Amended Complaint, Plaintiffs allege a common law claim of trespass. In general, "[t]o enter upon another's land without consent is a trespass." *Desnick v. American Broad. Co., Inc.*, 44 F3d 1345, 1351 (7th Cir. 1995); *see also Carter v. Rosenbeck*, 214 F.Supp.2d 889, 897 (C.D. Ill. 2002) ("A trespasser is one who enters the premises of another for his own purposes without permission, invitation or other right."). In their summary judgment motion, Defendants contend that because their entry into the Callahans' home was lawful due to exigent circumstances, Plaintiffs' state law claim for trespass must fail. As discussed above, there is a genuine issue of material fact for trial whether Deputies Alrdridge's and Macko's entry into the Callahans' home was lawful in the first instance. As such, the Court cannot conclude – as a matter of law – that Plaintiffs' trespass claim has no merit.

Finally, the Illinois Tort Immunity Act does not shield Deputy Aldridge and Deputy Macko from liability because there is evidence in the record that Deputy Aldridge's and Deputy Macko's conduct was willful and wanton when the unlawfully entered the Callahans' home. In particular, according to the Callahans, despite their telling the deputies they did not have a burglar alarm and despite the lack of a burglar alarm going off, the deputies forced their way into the Callahans' home without a search warrant and without consent. In fact, the deputies admit that they did not hear a burglar alarm when they arrived at the Callahans' home. (Pl.'s Stmt. Facts ¶ 43.) Moreover, when later asked what the emergency situation was, Deputy Macko testified that he was concerned about the condition and treatment of Callahans' dogs – not that a burglar alarm was going off. (*Id.* ¶ 46; Defs.' Stmt. Facts ¶ 11.) Deputy Macko also testified

11

that he thought he had consent to enter the Callahans' home, which the Callahans' unequivocally deny. Defendants' shifting stories and Plaintiffs' evidence that Defendants forced their way into their home defeats Defendants' summary judgment as to this claim.

In sum, "[c]onduct is willful and wanton when it 'shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property.'" *Smith v. City of Chicago,* 242 F.3d 737, 744 (7th Cir. 2001) (citing 745 ILCS 10/1-210). Here, Plaintiffs have presented evidence raising a genuine issue of material fact for trial that the deputy sheriffs' conduct was willful and wanton based on their conscious disregard for the safety of the Callahans and their property when they forced their way into the Callahan home. *See Chelios,* 520 F.3d at 693 (Whether an officer's conduct was willful and wanton is normally a question of fact to be determined by the jury). Therefore, the Court denies Defendants' summary judgment motion as to Plaintiffs' state law trespass claim.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' Motion for Partial Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(c).

**Date:** February 9, 2011

                                             **ENTERED**

                                         **AMY J. ST. EVE**
                                         **United States District Court Judge**